UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALTAMONTE PEDIATRIC
ASSOCIATES, P.A., a Florida
Corporation,

    Plaintiff,

v.

GREENWAY HEALTH, LLC,
a Delaware Limited Liability Company,

    Defendant.
_____/

CLASS ACTION

Case No. 8:20-cv-00604

## GREENWAY'S MOTION TO DISMISS COUNT I OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Greenway Health, LLC ("Greenway"), pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), moves to dismiss Count I of Altamonte Pediatric Associates, P.A.'s ("Plaintiff") First Amended Complaint ("FAC").

## INTRODUCTION

In its September 4, 2020 Order granting in part Greenway's Motion to Dismiss Plaintiff's Complaint ("Dismissal Order"), this Court dismissed Counts I, II, and III. The Court declined to dismiss Counts IV and V. The FAC, filed on September 18, 2020, re-alleges Count I, along with Counts IV and V. Count I again should be dismissed, this time with prejudice.[1]

---

[1] The FAC retains the numbering of the original complaint. Greenway moves to dismiss Count I, but not Counts IV or V. "Filing a partial motion to dismiss effectively suspends that party's response time for the entire complaint." *McBride v. Liberty Mut. Fire Ins. Co.*, 2017 WL 4286316, at *1 (M.D. Fla. September 22, 2017); *see Jacques v. First Liberty Ins. Corp.*, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016) (finding that "the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion"). Accordingly, Greenway will respond to Counts IV and V once this motion to dismiss Count I is determined.

1

In its order, the Court correctly viewed Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim as sounding in fraud "as it avers only false statements and misrepresentations by Greenway." Doc. 73 at 11. Yet Plaintiff "does not allege the specific time, place, or person responsible for the allegedly fraudulent statements, as required by Rule 9(b)." *Id.* at 11. This remains true. Despite adding 35 paragraphs across 18 pages of additional statements made by Greenway between 2013 and 2017, Count I fails to allege Greenway knowingly made false statements or misrepresentations and continues to fall short of alleging any fraud with the requisite particularity. As detailed below, after two attempts to get this claim right, the FAC's FDUTPA claim remains fatally deficient, and Count I should be dismissed with prejudice.

## FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT[2]

The fundamental facts in the FAC remain unchanged. Plaintiff's claims remain premised upon the allegation that, contrary to Greenway's representations, its Intergy software does not satisfy the requirements of the federal government's "Meaningful Use" program and has not satisfied those requirements for years. Doc. 77 ¶ 87. But, Plaintiff successfully used Intergy to participate in the various government programs and does not allege any failure to receive incentive payments prior to program year 2018.

Intergy is certified EHR software developed by Greenway's pre-merger predecessor Vitera. *Id.* ¶¶ 18, 19, 36. In 2009, the HITECH Act promoted the adoption and meaningful use of certified EHR technology. Under that program, EHR developers obtain software certification from an authorized accredited testing laboratory (ONC-ATS) and certification body (ONC-ACB). *Id.* ¶

---

[2] Defendant accepts as true the well-pleaded fact allegations of the complaint, as it must on a motion to dismiss. However, the Court need not accept inferences drawn by the Plaintiff if such inferences are unsupported by the facts set out in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Nor must the court accept legal conclusions cast in the form of factual allegations. *Id.* at 678. *See* Doc. 73 at 6.

23. Eligible Professionals receive CMS incentive payments for using certified EHR technology, among other requirements. *Id.* ¶ 24.

In January 2010, CMS published rules setting forth "Stage 1" meaningful use requirements, including the so-called "2011 Edition" EHR certification criteria. *Id.* ¶ 26(a). It specified that in seeking incentive payments, providers "should rely on the certification" received by EHR vendors "as evidence that a product contains the required features." *Id.* ¶ 30. Intergy was certified as supporting Stage 1 meaningful use attestation. *Id.* ¶ 38.

In September 2012, CMS published rules for "Stage 2" meaningful use requirements, including the so-called "2014 Edition" criteria. *Id.* ¶ 26(b). On September 19, 2013, Vitera announced that Intergy was 2014-Edition approved. *Id.* ¶ 40. On September 30, 2013, Plaintiff contracted with Vitera for Intergy. *Id.* ¶ 81 & Ex. 2, 3.

On October 16, 2015, CMS published rules setting forth "Modified Stage 2" and "Stage 3" meaningful use requirements. *Id.* ¶ 26(c). Greenway represented that Intergy satisfied these certification criteria. *Id.* ¶ 41.

Plaintiff's contract with Greenway incorporates "Documentation," which represents that Intergy is a certified EHR. *Id.* ¶¶ 83-86, 138-39, 165. Various Greenway contracts also contain warranty provisions stating that Greenway will "cause the Subscription Services to remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards." ¶¶ 4, 82, 137, 164, & Ex. 3 at 2.

Plaintiff successfully used Intergy to participate in the various government programs; it does not allege any failure to receive incentive payments prior to program year 2018. In September 2018, Greenway informed its customers that Intergy contained bugs that could affect customer

3

reporting for government incentive programs. *Id.* ¶ 97. Greenway disclosed that Intergy contained additional errors after September 2018. *Id.* ¶¶ 99, 103-09.

More specifically, Greenway disclosed that Intergy failed to satisfy two measures relating to the patient portal for 2017 and 2018, Doc. 77 ¶¶ 97, 99, 103, and that Intergy could not reliably calculate "dozens" of electronic Clinical Quality Measures (CQMs) in 2018 and 2019. *Id.* ¶¶ 105-09. As to the patient portal measures, Greenway disclosed these errors and estimated delivery dates for their correction. *Id.* ¶¶ 97, 99.

As to the CQM measures, Plaintiff acknowledges that providers need only report on at least 6 of 64 different CQMs. *Id.* ¶ 102. In response to these bugs, Greenway proactively recommended that customers not attest to any PI measures using Intergy for 2018. *Id.* ¶ 103. Plaintiff alleges that it was "unable to submit statistics necessary to attest. . . for the 2018 reporting period." *Id.* ¶ 126. Yet Plaintiff appears to have used alternative measures to qualify for a payment. *Id.* ¶ 144 (stating that Plaintiff "alter[ed] [its] reporting strategy to either replicate unavailable information or use[d] measures and statistics that [it] had traditionally not used for reporting"). The FAC acknowledges that five providers successfully qualified for Medicaid PI payments "despite the errors in Intergy" for the 2018 reporting year. *Id.* ¶ 144, *see also* ¶ 153. Eight providers apparently did not. *Id.* ¶ 143.

These allegations are centered on the 2018 reporting year. Although Plaintiff alleges in conclusory terms that Intergy "did not satisfy the requirements of the Meaningful Use program for many years," *id.* ¶ 87, *see also* ¶ 190, it provides no facts supporting this conclusion. Instead, the FAC addresses a different product, Prime Suite, which as noted, is the subject of a separate lawsuit.[3] *Id.* ¶¶ 83, 90-93, 98, 104. Paragraph 90 also references SuccessEHS, still a third

---

[3] *See Pulmonary Assocs. Of Charleston PLLC v. Greenway Health, LLC*, Case No. 3:19-cv-00167-TCB (N.D. Ga.).

4

Greenway product, which is not the subject of this lawsuit. The only allegation as to Intergy is the conclusory and redundant statement in ¶ 90 that Greenway "disclos[ed] pervasive, critical errors in Intergy" and that Intergy had "flaws." Plaintiff seeks an inference, based on irrelevant facts about Prime Suite and SuccessEHS, that these flaws existed in Intergy prior to Greenway's 2018 disclosures. *Id.* ¶ 93, 115. This is not enough for a FDUTPA claim to survive a motion to dismiss.

## STANDARD OF REVIEW

In considering whether a complaint states a claim for relief under Rule 12(b)(6), the factual allegations, taken as true, must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Further, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

The particularity requirement for fraud in Rule 9(b) of the Federal Rules of Civil Procedure applies to fraud-based claims brought in federal court. *Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (citing *Llado–Carreno v. Guidant Corp.*, 2011 WL 705403, at *5 (S.D. Fla. Feb.22, 2011) ("The particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law.")). Thus, the complaint must set forth:

> (1) precisely what statements were made in what documents ..., (2) the time and place of each such statement and the person responsible for making [them], and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

5

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). This Court already concluded that the Rule 9(b) particularity standard applied to Count 1 for violation of FDUTPA. Doc. 73 at 9-11.

## ARGUMENT

### I. COUNT I (FDUTPA) SHOULD BE DISMISSED.

In Count I, Plaintiff alleges that Greenway "engaged in unfair and deceptive acts and practices" by "falsely stating" that Intergy satisfied the requirements of the Meaningful Use program and was compliant, "making false statements" to its accrediting body in order to obtain certification of compliance, and "concealing" from Plaintiff the truth about Intergy's failure to satisfy the certification requirements of the Meaningful Use program. Doc. 77 ¶ 179. Plaintiff further alleges that Greenway's "deceptive trade practices" injured it by causing it to pay "inflated prices," causing it to contract or renew its contract with Greenway, causing it to lose the benefits of reporting on the meaningful use of a certified EHR, and causing it out of pocket expenses, time and other resources to cure or cope with the software's deficiencies. *Id.* ¶ 180. Despite the inclusion of additional statements made by Greenway between 2013 and 2017, Count I remains deficient and should be dismissed.

### A. Plaintiff fails to sufficiently allege facts showing a deceptive act or practice by Greenway.

Plaintiff fails to allege that Greenway knowingly made any false or misleading statements. Florida courts require four elements to establish fraud: (1) a false statement concerning a material fact; (2) the defendant's *knowledge* that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation. *Fid. Natl. Fin., Inc. v. Attachmate Corp.*, 2017 WL 3726687, at *3 (M.D.

Fla. Mar. 1, 2017). Although reliance is not required for causation under FDUTPA, FDUTPA claims based on fraud must still assert that the defendant made a false representation, *knew the falsity of its representation*, and understood it would likely deceive consumers, resulting in injury. *See id.* at *4. The FAC offers no facts to support a contention that Greenway's statements or representations were *knowingly* false and thus fraudulent. Instead, it merely states, without elaboration or factual support, that Greenway "fraudulently obtained an unearned [Meaningful Use] certification" and that the Intergy software "did not satisfy the requirements of the Meaningful Use program for many years." Doc. 77 ¶¶ 87, 179.

But to survive a motion to dismiss, a FDUTPA plaintiff must allege some factual basis for a claim of false or misleading statements that rise above a speculative level and satisfy, at a minimum, the *Twombly / Iqbal* pleading standard. *See, e.g.*, *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355–56 (S.D. Fla. 2012) (dismissing FDUTPA claim for failure to allege facts supporting conclusory allegation of false advertising); *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *5–6 (S.D. Fla. Sept. 13, 2013) (same); *Varnes v. Home Depot USA, Inc.*, 2012 WL 5611055, at *1 (M.D. Fla. Nov. 15, 2012) (holding that "formulaic recitation of the elements under FDUTPA using conclusory statements is not enough to state a cause of action").

> **1. Plaintiffs newly added allegations fail to allege facts regarding Greenway's knowledge that any statement was false or misleading when made.**

Plaintiff offers 18 new pages of statements by Greenway that Plaintiff contends "conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements." Doc. 77 ¶¶ 44-79. Yet the FAC fails to offer a single fact regarding Greenway's knowledge that these statements were false or misleading when made, and thus fraudulent.

Plaintiffs' fraud-based FDUTPA claim cannot be based solely on the fact that Intergy contained errors. The software documentation attached to the FAC represents that the product will not be error-free. Doc. 77-2 at 5 (§6.1). Selling a defective product, in and of itself, is not a deceptive trade practice. *See Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1342-43 (S.D. Fla. 2011). As one court observed, "Customers often buy software with bugs" and "one would be hard pressed to find a software program on the market without at least some technical glitches." *Frazier v. VitalWorks, Inc.*, 341 F. Supp. 2d 142, 154 n.4 (D. Conn. 2004).

Plaintiff merely alleges, without more, that Greenway purportedly made "false statements to its accredited certification body" in order to "fraudulently obtain an unearned [Meaningful Use] certification." that the Intergy software "did not satisfy the requirements of the Meaningful Use program for many years," and Greenway mislead consumers into purchasing and renewing the software. Doc. 77 ¶¶ 6, 36, 87, 179-80. Such unsubstantiated claims amount to little more than mere speculation that Greenway's statements are false or deceptive. For example, Plaintiff alleges, "Upon information and belief, [Intergy] errors were not limited to 2018 and spanned back many years because there is no reason to believe that Greenway suddenly introduced errors in 2018 that caused every single Meaningful Use measure and CQM to suddenly generate compromised data." *Id.* ¶ 115. But there is no corresponding allegation that Greenway was aware of these errors at the time of the purportedly false or misleading statements and knowingly misrepresented Intergy's abilities to customers.

### 2. The insufficient factual support regarding Greenway's knowledge of any falsity or misleading statements warrants Count I's dismissal.

Without additional detail as to why a statement is untrue or misleading, dismissal is warranted. In *Guerrero*, a consumer sued Target under FDUTPA claiming that Target's marketing of honey was misleading because the "honey" sold by Target did not contain the naturally

8

occurring pollen required to meet Florida's "honey standard." *Guerrero*, 889 F. Supp. 2d at 1352. Noting that under *Twombly* and *Iqbal*, "a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" the court dismissed the FDUTPA claim. Other than conclusory assertions that the honey sold by Target did not contain pollen, the complaint "fail[ed] to provide any more specific details" regarding the pollen content of Target's honey products. *Id.* at 1355 (quoting *Iqbal*, 556 U.S. at 678).

In an attempt to support its conclusory assertions, the FAC relies on references to a February 2019 matter in which Greenway settled (without admitting) Department of Justice allegations that it violated the False Claims Act from 2011 to 2017 by misrepresenting the capabilities of Prime Suite, a completely separate EHR product. ¶ 92. The FAC further relies on an audit Greenway conducted in late 2018 – over a year after the DOJ investigation opened and five years after Plaintiff first entered into its contract with Greenway – to support its contention that for years Intergy "failed to comply with the Meaningful Use program." ¶¶ 89-93. This allegation amounts to mere speculation.

A plaintiff cannot turn speculation into fact by simply pointing to other materials if those materials are not relevant to the specific representations a defendant is alleged to have made. In *Toback*, a plaintiff sued GNC under the FDUTPA claiming that its TriFlex supplement did not promote joint health and function as advertised. 2013 WL 5206103, at *1. The plaintiff in *Toback* cited numerous medical studies allegedly demonstrating that two featured ingredients in the TriFlex products were ineffective for improving joint health, and that he did not get the benefit of his bargain from them. *Id.* The Court dismissed the FDUTPA claim for failure to raise allegations above the speculative level because the studies plaintiff pointed to failed to address the efficacy of the product as a whole, or any of the other ingredients contained in the product. *Id.* at *5-6. The

9

plaintiff therefore had insufficient factual support for the allegation that the product did not function as advertised. *Id.* at *6.

Plaintiff's allegations similarly fail. Even construing the allegations most favorably to Plaintiff, they do not lead to the reasonable inference that Greenway's statements to its accredited certification body, its customers, or its prospective customers were fraudulent. First, as explained in Part B *infra*, the FAC fails to identify a single false statement made to Greenway's accredited certification body. Second, Plaintiff's allegations identifying contemporaneous disclosures for both Prime Suite and Intergy in 2018 and 2019 raise *newly identified* errors from Greenway's audit and other testing, not errors known by Greenway in prior periods.

Specifically, Plaintiff references Greenway's post-audit disclosures stating, "We [Greenway] have identified an issue we want to bring to your immediate attention," ¶ 97. "As part of our testing, we discovered a new issue related to VDT that delayed the availability of the updated measure logic." ¶ 99. "Through our recent audit, we discovered that several Promoting Interoperability measures are calculating numerators at higher values than they should." ¶ 103. "[W]e have uncovered issues that could result in your practice not being able to attest for 2018 Medicaid PI." ¶ 112. The FAC does not assert, nor can it, that any of these disclosures are false or misleading. Accordingly, these newly identified errors cannot support Plaintiff's allegations that Greenway knowingly misrepresented Intergy's certification status or compliance with Meaningful Use program requirements for any period.

Similar to *Guerrero*, the FAC fails to provide any specific details regarding any knowingly false or misleading statements to its accrediting certification body, customers, or potential customers. And, as in *Toback*, any reference to the DOJ matter and settlement involving an unrelated product are not relevant to the specific representations that Greenway is alleged to have

10

made about Intergy. In short, Plaintiff's general and conclusory allegations of false and misleading statements amount to mere speculation. Such allegations fail to satisfy the *Twombly* / *Iqbal* pleading standard.

Because the FAC offers no facts that raise its assertions of any purported deceptive act or practice above mere speculation, Count I should be dismissed.

**B.     Claims sounding in fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).**

Plaintiff's FDUTPA claim still falls far short of the Rule 9(b) standard, as the FAC does not allege with particularity how or why Greenway's alleged representations were fraudulent. Dismissal is warranted for this reason alone.

First, the FAC again fails to identify *any* false statements to Greenway's accredited certification body. Plaintiff cannot avoid its pleading requirements here by relying on the fact that Greenway's certification to the accrediting body are "not publicly available … but the certification process would have required Greenway to make these certifications." Doc. 77 ¶ 36. As the Court previously noted, "Altamonte admits that these certifications are also within the certifying bodies' control [and] [t]herefore, Altamonte cannot benefit from [a] more lenient pleading standard." Doc. 73 at 12 n.3; *see also* Doc. 77 ¶¶ 23, 28, 36. Accordingly, the FAC fails to allege Greenway made false statements to the certification body or fraudulently obtained certification.

Second, Plaintiff appears to allege "fraud by hindsight." *See United States ex rel. Sanchez v. Abuabara*, 2012 WL 5193415, at *6 (S.D. Fla. Oct. 19, 2012) (citing *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (noting that "plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones")). In *Sanchez*, the court "declined … to pile inference upon inference to arrive at the tenuous inference that Defendants perpetrated a fraud." *Id.* (reasoning that "[b]ecause things did not work out between him and

11

Defendants, Relator reverse engineer[ed] from this fact to conclude that Defendants" made objectively false representations and committed fraud). "Rule 9(b) requires that a complaint do more than, as here, narrate a series of events from which the existence of fraudulent conduct is merely possible." *Id.*

Yet that is exactly what Plaintiff does here. Plaintiff alleges that the "similar timing and language" of a Greenway email regarding Intergy that was "nearly identical [to an] email concerning Prime Suite" – a completely separate EHR product wholly unrelated from the Intergy software, – "suggest[s] that Prime Suite and Intergy share errors to common software code and/or backend functionality." Doc. 77 ¶ 104, *see also* ¶ 92. This speculation is not enough under Rule 9(b). The court "cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit." *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).

To the contrary, Rule 9(b) requires "some indicia of reliability[, some facts as to time, place, and substance of the defendant's alleged fraud] … in the complaint to support the allegation of" fraud. *Id.* at 1311. The FAC contains no such detail until 2018 when Greenway self-disclosed errors identified after conducting an audit and additional testing. Doc. 77 ¶¶ 97, 99, 103, 112. But Plaintiff does not allege any of those 2018 or 2019 self-disclosures are fraudulent.

Instead, Plaintiff contends that it "is unable to identify the precise start date of the [earlier] errors" because "[o]nly Greenway has the detailed information regarding Intergy's source code and development to state precisely which version of Intergy introduced the errors and when." Doc. 77 ¶¶ 100, 110, 113. Plaintiff further alleges that "*[u]pon information and belief*, [Intergy] errors were not limited to 2018 and spanned back many years because there is no reason to believe that

Greenway suddenly introduced errors in 2018 that caused every single Meaningful Use measure and CQM to suddenly generate compromised data." *Id.* ¶ 115.

But Plaintiff cannot benefit from a more lenient pleading standard where there is no indicia of reliability that Greenway fraudulently misrepresented its compliance with an intricate government program to its customers. *See Clausen*, 290 F.3d at 1314 n.25 (noting that without a factual basis for a claim of fraud, the particularity requirements of Rule 9(b) should not be relaxed; this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations" for such belief).

Because the FAC fails to allege fraud with particularity and Plaintiff cannot benefit from a more lenient pleading standard, Count I should be dismissed.

C.     **Plaintiff Attempts to Recast Its Breach of Contract Claims as Fraud.**

Although Plaintiff couches Count I in terms of fraud, the factual allegations for this claim remain indistinguishable from the allegations that Plaintiff contends support its breach of contract claim.[4] "A breach of contract claim without significant allegations of unfair or deceptive conduct is insufficient to state a cause of action under FDUTPA." *Hache v. Damon Corp.*, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008). As this Court declared in dismissing a FDUTPA claim in *Sweeney v. Kimberly-Clark Corp.*, 2015 WL 5446797, at *7 (M.D. Fla. Sept. 15, 2015), "a claim under FDUTPA does not arise from an alleged breach of warranty or breach of contract claim." *See also Hogan v. Praetorian Ins. Co.*, 2018 WL 8266803, at *11 (S.D. Fla. Jan. 11, 2018) (it is "insufficient to state a FDUTPA claim" when the allegations, "in substance, appear to be little

---

[4] Because the Court dismissed the FDUTPA claim on other grounds, the Court did not address this argument in its prior Dismissal Order.

more than another attempt to plead her claim for breach of the implied covenant of good faith and fair dealing"); *Varnes*, 2012 WL 5611055, at *1.

As explained above, the FAC nowhere alleges that Greenway made any fraudulent statements to its accrediting certification body, knowingly mislead customers or potential customers, or any misrepresentations when it disclosed the errors in Intergy to its customers in 2018 and 2019. It thus fails to articulate how this claim is different from its breach of warranty claims. *See Jovine*, 795 F. Supp. 2d at 1342-43 ("Plaintiff, however does not explain how selling a defective product, in and of itself, is a deceptive trade practice").

### D. Plaintiff Fails to Assert a Claim for an "Unfair" Trade Practice.

Finally, to the extent Plaintiff intends to assert a claim for an "unfair" trade practice, it fails to plead any of the elements of such a claim or plead facts supporting such a claim.[5] "The standard for proving the existence of a deceptive act is different than the standard for proving an unfair practice." *Fid. Nat'l*, 2017 WL 3726687, at *2. FDUPA adopts the Federal Trade Commission definition of "unfairness," which requires that injury to the consumer be (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) an injury that the consumer could not reasonable have avoided. *See Porsche Cars N.A., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014); *Casey v. Fla. Coastal Sch. Of L., Inc.*, 2015 WL 10818746, at *3 (M.D. Fla. Sept. 29, 2015) (dismissing FDUTPA claim for failure to "state a plausible claim that publishing the salary data in the manner alleged would result in probable deception to a reasonable consumer, or that the substantial injury alleged could not have been reasonably avoided").

---

[5] Because the Court dismissed the FDUTPA claim on other grounds, the Court did not address this argument in its prior Dismissal Order.

14

Plaintiff's failure to allege these elements or specific facts supporting a violation, warrant dismissal. *See Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, 2010 WL 2821950, at *4–5 (M.D. Fla. July 16, 2010).

## CONCLUSION

For the foregoing reasons, Greenway respectfully requests that the Court dismiss Count I of the FAC with prejudice and award such further relief as appropriate.

Respectfully submitted,

*/s/ Adam P. Schwartz*
Adam P. Schwartz
Florida Bar No. 83178
D. Matthew Allen
Florida Bar No. 866326
Joseph W. Swanson
Florida Bar No. 29618
Erin J. Hoyle
Florida Bar No. 117762
CARLTON FIELDS, P.A.
P.O. Box 3239
Tampa, FL 33601-3239
Telephone: 813.223.7000
Facsimile: 813.229.4133
E-mail: aschwartz@carltonfields.com
E-mail: mallen@carltonfields.com
E-mail: jswanson@carltonfields.com
E-mail: ehoyle@carltonfields.com

*Counsel for Greenway Health, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2020, I electronically filed the foregoing Motion to Dismiss with the Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in this case.

*/s/ Adam P. Schwartz*
Adam P. Schwartz

Florida Bar No. 83178