UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALTAMONTE PEDIATRIC
ASSOCIATES, P.A.,

        Plaintiff,
v.                                 Case No. 8:20-cv-604-T-33JSS

GREENWAY HEALTH, LLC,

        Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Greenway Health, LLC's Motion to Dismiss Count I of the First Amended Complaint (Doc. # 82), filed on October 1, 2020. Plaintiff Altamonte Pediatric Associates, P.A., responded on October 15, 2020. (Doc. # 88). For the reasons set forth below, the Motion is granted in part.

**I.    Background**

Altamonte is a pediatric healthcare provider that was in the market for certified Electronic Health Record ("EHR") software. (Doc. # 77 at ¶ 1). Healthcare providers are incentivized to use EHR software through the federal Meaningful Use program, which "provides monetary incentive payments through Medicare and Medicaid." (Id. at ¶ 2). A significant part of determining whether healthcare providers

1

receive these benefits is if the EHR software utilized is certified, meaning it complies with federal regulations and "actually meets the standards of the Meaningful Use program." (Id. at ¶¶ 2, 23-24, 33-35).

Beginning in 2013, Altamonte contracted with Greenway to obtain certified EHR software for its pediatric practice. (Id. at ¶ 3). Before entering into the contract, Greenway made several representations to Altamonte regarding the software, Intergy, and its compliance with the Meaningful Use program. (Id. at ¶ 46-52). These promises were also included in Greenway's standard-form contracts. (Id. at ¶¶ 4, 83-58). Over many years, Altamonte "paid tens of thousands of dollars" for this certified EHR software. (Id. at ¶ 3).

However, Altamonte avers that Intergy has not met the requirements of the Meaningful use program for several years. (Id. at ¶ 7). Following a 2017 Department of Justice Investigation into another Greenway-owned EHR software, Prime Suite, Greenway ran tests on "three of its core EHR products: Prime Suite, Intergy, and SuccessEHS." (Id. at ¶ 8). "All three EHRS failed these tests," and "[i]n the months that followed, Greenway disclosed a litany of hidden errors with all three products and told customers they could not use the software to attest to the certified use of an EHR when

2

reporting to Medicare and Medicaid." (Id.).

In February 2019, the Justice Department announced that its investigation into Prime Suite resulted in a $57 million settlement to resolve Greenway's alleged violations of the False Claims Act for "intentionally rigg[ing] [Prime Suite] to cheat on testing during the certification process." (Id. at ¶ 9). The government further "alleged that Prime Suite had not been compliant with the Meaningful Use program for at least between January 1, 2014, and December 31, 2017." (Id.).

Although the settlement did not pertain to Intergy, Altamonte alleges that certain contemporaneous disclosures by Greenway of similar flaws in both Prime Suite and Intergy "support[] an inference that the two products share the same code or design and suffer from the same basic deficiencies." (Id. at ¶ 10). According to Altamonte, "[b]ased on Greenway's disclosures alone, Intergy has failed to meet the certification requirements of the Meaningful Use program at least [since] January 1, 2017." (Id. at ¶ 10).

Because of these program flaws, Altamonte employees had to spend "numerous hours addressing the errors in Intergy" in 2018 and 2019. (Id. at ¶ 11). Altamonte then "submitted reports for the 2018 calendar year to Medicaid in 2019." (Id.). However, following Altamonte's submission of these

reports to Medicaid, Greenway announced additional errors in Intergy, "which prevented eight of Altamonte['s] . . . pediatricians and nurses from qualifying for $68,000 in incentive payments." (Id.).

Altamonte initially filed this class action on March 13, 2020. (Doc. # 1). On May 29, 2020, Greenway moved to dismiss the complaint (Doc. # 36), which the Court granted in part on September 4, 2020, dismissing three counts without prejudice. (Doc. # 73). Notably, the Court dismissed Altamonte's claim for violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) because it was not pled with particularity. (Id. at 8-14).

With leave of Court, Altamonte filed an amended complaint on September 18, 2020. (Doc. # 77). Altamonte seeks class certification on behalf of similarly situated Intergy customers. (Id. at ¶ 163). The amended complaint includes claims against Greenway for violations of FDUTPA (Count I) and breach of contract (Counts IV and V).[1] (Doc. # 77).

On October 1, 2020, Greenway moved to dismiss Count I of the amended complaint for failure to state a claim (Doc. # 82), and Altamonte has responded. (Doc. # 88). On October 26,

---

1. Altamonte's amended complaint maintains the original complaint's numbering.

2020, Greenway withdrew the Motion's first argument. (Doc. ## 90; 91). The Motion is now ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the

complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

The Federal Rules of Civil Procedure accord a heightened pleading standard to claims for fraud, requiring that they be pled with particularity. Fed. R. Civ. P. 9(b). Under Rule 9(b), the "plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

This "requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

**III. Analysis**

Greenway seeks to dismiss Count I of the amended complaint, Altamonte's FDUTPA claim, on these bases: (1)

Altamonte has still not satisfied the heightened Rule 9(b) pleading standard; (2) Altamonte's FDUTPA claim is "indistinguishable" from its breach of contract claim; and (3) Altamonte has failed to plead the elements of an "unfair" trade practice under FDUTPA. (Doc. # 82 at 11-14). The Court will address each argument in turn.

### A. Rule 9(b)

First, Greenway argues that Altamonte still has not pled its FDUTPA claim with the particularity required by Rule 9(b). (Doc. # 82 at 11). As discussed in the Court's previous order, Altamonte's FDUTPA claim must meet Rule 9(b)'s heightened pleading standard because it sounds in fraud. (Doc. # 73 at 9-11). The Court previously dismissed Altamonte FDUTPA claim because it failed to plead the specific time, place, or person responsible for Greenway's allegedly misleading statements. (Id. at 13-14). Altamonte has now amended its complaint to include several specific statements. (Doc. # 77 at ¶ 45-79).

To state a cause of action under FDUTPA, a plaintiff must sufficiently allege these three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting City First Mortg. Corp. v. Barton, 988 So.2d 82, 86 (Fla. 4th DCA 2008)).

"A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006)). "This . . . requires a showing of probable, not possible deception that is likely to cause injury to a reasonably relying consumer." In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig., 955 F. Supp. 2d 1311, 1332 (S.D. Fla. 2013) (citations omitted).

To allege a deceptive or unfair practice under Rule 9(b), the plaintiff must "state with particularity the circumstances constituting fraud" by "identify[ing] the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud." Weiss v. Gen. Motors LLC, 418 F. Supp. 3d 1173, 1178-79 (S.D. Fla. 2019).

However, "[t]he particularity requirement may be relaxed for allegations of 'prolonged multi-act schemes.'" Burgess v.

8

Religious Tech. Ctr., Inc., 600 F. App'x 657, 662 (11th Cir. 2015) (citing United States ex rel. Clausen v. Lab'y Corp. of Am., Inc., 290 F.3d 1301, 1314 n.25 (11th Cir. 2002)). This more "relaxed standard permits a plaintiff to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud." Id. at 663. "Even under the relaxed requirement, however, a plaintiff is still required to allege at least some particular examples of fraudulent conduct to lay a foundation for the rest of the allegations of fraud." Id.

Here, Altamonte alleges that Greenway has violated FDUTPA in three ways, by: "(1) falsely stating to Altamonte . . . that Intergy currently satisfied the certification criteria of the Meaningful Use program and that Intergy is 'compliant'[;] (2) making false statements to its accredited certification body in order to fraudulently obtain an unearned certification of compliance with the criteria of the Meaningful Use program[;] and (3) concealing from Altamonte . . . the truth about Intergy's failure to satisfy the certification criteria of the Meaningful Use program." (Doc. # 77 at ¶ 179). The Court finds that Altamonte has now met the Rule 9(b) pleading standard for its first and third theories of liability under FDUTPA, but that Altamonte still

has not pled with particularity any statements made by Greenway to an accredited certification body.

Regarding the first and third allegations – that Greenway made false statements and omissions to Altamonte – the amended complaint has now met the Rule 9(b) pleading standard. Altamonte provides numerous examples of allegedly misleading statements, including details about the statements' speaker, the time and date they were spoken, who received the statements, and the contents thereof. (Doc. # 77 at ¶¶ 45-79). These include representations from before Altamonte and Greenway entered into their contract, during the contract discussions, during the contractual period, and representations in the contracts themselves. (Id.).

One illustrative example is dated August 9, 2017, when Jennifer Keller, a Greenway employee, sent an e-mail to Becky James and Phyllis Zissman, both Altamonte employees. (Id. at ¶ 79). In that e-mail, Keller forwarded an Intergy brochure that discussed "updates for Meaningful Use Stage 3 and stat[ed] that the 'Portal and Messaging Now Support [Meaningful Use Stage 3] Objectives 5, 6, and 7." (Id.). That e-mail also stated: "Intergy Practice Analytics . . . give your site the correct Meaningful Use credit." (Id.). Altamonte alleges these statements gave it the "overall

10

impression . . . that Intergy [was] Meaningful Use compliant and comport[ed] with the government's reporting requirements," although Altamonte alleges it actually was not compliant. (Id.).

Considering that Altamonte provides a number of other specific examples of allegedly deceptive statements made to Altamonte regarding Intergy's compliance with the Meaningful Use program, causing Altamonte to contract with Greenway, and resulting in actual damages, the FDUTPA claim – to the extent it bases liability on misrepresentations or omissions made to Altamonte – has now been pled with particularity. (Doc. # 77 at ¶ 178-79); see Total Containment Sols., Inc. v. Glacier Energy Servs., Inc., No. 2:15-cv-63-FtM-38CM, 2015 WL 3562622, at *2-3 (M.D. Fla. June 5, 2015) (finding that the plaintiff "more than . . . satisf[ied] Rule 9(b)" by pleading the defendant's alleged misrepresentations, that these misrepresentations induced the plaintiff to contract with the defendant, and suffered damages as a result). This holding is reinforced by the primary purpose of Rule 9(b), which is to "alert defendants to the precise misconduct with which they are charged." Sirmon v. Wyndham Vacation Resorts, Inc., No. 7:10-cv-2717-LSC, 2012 WL 13020303, at *4 (N.D. Ala. Apr. 17, 2012) (citation omitted). Altamonte has provided the

particular statements in which Greenway told Altamonte that Intergy was Meaningful Use-compliant, thereby putting Greenway on notice of the exact misrepresentations alleged.

However, regarding Altamonte's second FDUTPA allegation, in which it avers that Greenway made "false statements to its accredited certification body in order to fraudulently obtain an unearned certification of compliance with the criteria of the Meaningful Use program," Altamonte still has not pled its claim with the requisite particularity. (Doc. # 77 at ¶ 179). Despite the Court's previous order alerting Altamonte to its pleading deficiencies regarding this basis for its FDUTPA claim, Altamonte still has not alleged the specific time, place, or person responsible for the allegedly fraudulent statements made by Greenway to any accredited certification body, or the contents thereof. (Doc. # 73 at 11-14); see Am. Dental, 605 F.3d at 1291 ("We have held that pursuant to Rule 9(b), a plaintiff must alleged: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." (citation omitted)). Altamonte's conclusory allegations are speculative, devoid of factual support, and thus do not

satisfy Rule 9(b).[2] (Doc. # 77 at ¶¶ 36; 87; 179); see Sol. Z v. Alma Lasers, Inc., No. 11-cv-21396-CIV-LENARD/O'SULLIVAN, 2012 WL 13012765, at *3 (S.D. Fla. Jan. 25, 2012) (dismissing a conclusory FDUTPA claim that did not specify who made the alleged false statements, when and where they were made, and the content thereof).

Therefore, the Court dismisses Count I without prejudice to the extent that it is premised on Greenway's alleged false or misleading statements made to accredited certification bodies. See Fellner v. Cameron, 2:10-cv-155-FtM-99SPC, 2012 WL 1648886, at *3 (M.D. Fla. May 10, 2012) (dismissing a fraud claim because the plaintiff identified no specific misrepresentations). Count I remains intact only to the extent that it is premised on alleged deceptive statements or omissions that Greenway made to Altamonte. See Baker v. Brunswick Corp., No. 2:17-cv-572-FtM-99MRM, 2018 WL 1947433,

---

2. As explained in the Court's previous order, Altamonte cannot benefit from the "prolonged multi-act scheme" exception with regard to this allegation because Altamonte has failed to specifically plead any examples of false or misleading statements made to an accredited certification body. (Doc. # 73 at 13-14). And, Altamonte cannot argue that it need not plead these statements with particularity under the "exclusive-control" exception either. As noted in the previous order, this exception requires that the information "cannot be possessed by other entities," which is not the case here, as these statements would also be within the certifying bodies' control. (Id. at 12 n.3).

13

at *6 (M.D. Fla. Apr. 25, 2018) (denying a motion to dismiss because the plaintiff alleged an FDUTPA claim with the requisite particularity).

### B. Pleading FDUTPA and Related Breach of Contract Claims

Next, Greenway argues that Altamonte's FDUTPA claim must be dismissed because it is "indistinguishable from the allegations that . . . support its breach of contract claim." (Doc. # 82 at 13-14). Because the Court has already dismissed Altamonte's FDUTPA claim to the extent it is premised on misleading or false statements made by Greenway to an accredited certification body, the Court considers this argument only to the extent that Count I is based on misrepresentations or omissions Greenway made to Altamonte.

Greenway is correct that "[a] claim under FDUTPA applies to 'unfair' or 'deceptive' conduct and does not arise merely from an alleged breach of warranty or a breach of contract claim." Horton v. Woodman Labs, Inc., No. 8:13-cv-3176-T-30MAP, 2014 WL 1329355, at *4 (M.D. Fla. Apr. 2, 2014) (citing PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So.2d 773, 777 n.2 (Fla. 2003)). However, "Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or 'giving rise' to the breach, and 'does not rely solely on a violation of the

[a]greement as a basis for assertion of a FDUTPA claim.'" Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc., 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (quoting Rebman v. Follett Higher Educ. Grp., Inc., 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008)).

At this stage, Altamonte has sufficiently shown that the acts underlying the breach are deceptive apart from the parties' contractual obligations. According to Altamonte's amended complaint, Greenway misled Altamonte into believing it could submit documentation to government healthcare programs attesting to the use of certified EHR software, even though Intergy was not actually compliant with the Meaningful Use program. (Doc. # 77 at ¶ 178-80). This practice is deceptive, as defined by FDUTPA, because it is "likely to mislead consumers." Davis v. Powertel, Inc., 776 So.2d 971, 974 (Fla. 1st DCA 2000); see also Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007) ("The Florida Supreme Court has noted that deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." (citation omitted)); Intercoastal Realty, Inc. v. Tracy, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010) (explaining that a "deceptive act" under

15

FDUTPA should be "construed liberally").

The Court finds that these alleged misrepresentations would be deceptive absent a contract between the parties. See Ford Motor Co. v. Heralpin USA, Inc., No. 15-23638-Civ-Scola, 2015 WL 13799959, at *4 (S.D. Fla. Dec. 15, 2015) ("While undoubtedly related to its contract claim, Ford's FDUTPA claim alleges something more than mere breach. Ford alleges that Heralpin engaged in unfair and deceptive practices by misrepresenting [the] intended use and operation of [its product]."). Furthermore, Altamonte alleges these deceptive acts began before any contracts were formed, and before contractual discussions even began. (Doc. # 77 at ¶ 45-53). Therefore, Altamonte may plead its FDUTPA claim alongside its breach-of-contract claims, and the Court declines to dismiss Count I on this basis. See New England Lead Burning Co. v. Doral Imaging Inst., LLC, No. 12-23883-Civ-COOKE/TURNOFF, 2013 WL 12149620, at *3 (S.D. Fla. Dec. 31, 2013) (denying a motion to dismiss a plaintiff's FDUTPA claim because the "breach of contract claim [was] based upon [the defendants'] failure to pay the contracted price and the FDUTPA claim [was] based upon [the defendants'] alleged wrongful and deceitful conduct, which led to the formation and eventual breach of the contract").

C. **Unfair Trade Practice**

Finally, Greenway argues that "to the extent [Altamonte] intends to assert a claim for an 'unfair' trade practice, it fails to plead any of the elements of such a claim or plead facts supporting such a claim." (Doc. # 82 at 14). Altamonte does not address this argument in its response. (Doc. # 88).

Although Altamonte does not sufficiently plead the elements of an unfair practice, the amended complaint appears to claim an FDUTPA violation based only a *deceptive* practice. (Doc. # 77 at ¶ 180). Because FDUTPA creates a cause of action for *either* a deceptive or unfair practice, and Altamonte has sufficiently alleged a deceptive practice regarding statements or omissions made by Greenway to Altamonte, this basis does not warrant dismissal of Count I at the current juncture. See, e.g., Sclar v. Osteomed, L.P., No. 17-23247-CIV-MORENO, 2018 WL 559137, at *3 (S.D. Fla. Jan. 24, 2018) ("A plaintiff must establish three elements to assert a [FDUTPA] claim: (1) a deceptive act *or* unfair practice; (2) causation; and (3) actual damages." (emphasis added)).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Greenway Health, LLC's Motion to Dismiss (Doc. # 82) is **GRANTED** in part and **DENIED** in part.

17

(2) Count I is **DISMISSED** without prejudice to the extent that it is premised on false or misleading statements that Greenway made to an accredited certification body.

(3) Greenway's answer to the amended complaint is due within fourteen days of the date of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of October, 2020.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE